**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RICHARD BUDDY WILLIAMS,

        Plaintiff,

vs.                                      CASE NO.  3:07-cv-1030-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB"). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #29). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #30). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated April 18, 2008 (Doc. #16). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the

written record.  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

In the instant action, Plaintiff protectively filed an application for DIB on January 4, 2006, alleging disability beginning March 1, 2004 (Tr. 11).  After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on April 3, 2007 before Administrative Law Judge Teresa J. Davenport (the "ALJ") (Tr. 461-528).  Plaintiff appeared and testified at the hearing, as did his wife, and vocational expert Mark Capps (the "VE") (Tr. 314).  Plaintiff was represented at the hearing by attorney Lynn W. Martin (Tr. 461).  On May 9, 2007, the ALJ issued a hearing decision denying Plaintiff's claim (Tr. 11-19).  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 4-6).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

---

[1]All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by

3

substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Discussion

Plaintiff is a thirty nine year old male with past relevant work history in the construction industry (Tr. 470).[2] Plaintiff has a ninth grade education (Tr. 470). Plaintiff alleges he is unable to work due to scoliosis, wrist pain, right shoulder pain, skin fungi, and depression (Tr. 472). On April 19, 2006, the ALJ found Plaintiff was unable to perform his past relevant work related to the construction industry; however, she issued a decision denying Plaintiff's disability claim at the fifth step of the sequential evaluation process by finding Plaintiff could perform other work that exists in substantial numbers in the regional

---

[2]The record reveals Plaintiff was born on August 9, 1969 (Tr. 470).

and national economy (Tr. 19). Plaintiff raises four main issues on appeal. The undersigned will address each issue in turn.

### A. Whether the ALJ Erred by not Finding Plaintiff's Impairments Medically Equal One or More Listed Impairment(s)

Plaintiff's first argument is that the ALJ erred as a matter of law by not finding Plaintiff's impairments medically equaled one or more of the listed impairments under 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings"). Specifically, Plaintiff maintains his fungi impairment(s) medically equals one or more of the following listed impairments: (1) Listing 8.03, bullous disease—specifically, erythema multiforme bullosum;[3] (2) Listing 8.04, chronic infections of the skin or mucous membranes with extensive fungating or extensive ulcerating skin lesions persisting at least three months despite treatment; and (3) Listing 8.05, dermatitis–extensive skin lesions persisting at least three months despite treatment (Doc. #29 at 3-4).

Plaintiff additionally maintains his back impairment(s) meet or medically equal Listing 1.04 of the musculoskeletal system (Doc. #29 at 8), and that his mental impairment(s) meet or medically equal either 12.04, affective disorder, or 12.05, mental retardation (Doc. #29 at 10).

As set forth below, Plaintiff's aforementioned contentions are not supported by the evidence of record and the ALJ committed no error by finding Plaintiff's said impairments neither meet nor medically equal a listed impairment.

---

[3]Plaintiff described said impairment as: "erythema ultiforme bullosum"; however, since no such impairment is provided for in the Listings, the undersigned will presume Plaintiff intended to state erythema multiforme bullosum. *See* 20 C.F.R. 404 Appx. 1 Sub. P, 8.03.

> To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*quotations and citations omitted*); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 404.1525, 404.1526. The evidentiary standards for presumptive disability under the listings are more stringent than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 404.1520, 404.1526, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Wilkinson*, 847 F.2d at 662.

Here, in support of his contention that his skin fungi impairment(s) either meet or medically equal a listed impairment, Plaintiff states his treating physician, William F. Finan, Jr., M.D. ("Dr. Finan"), and North Florida Dermatology's ("NFD") records document that his fungi has existed for years, reoccurs with severe lesions over multiple body sites, interferes with use of extremities, limits his ability to do fine gross motor movements, and limits his ability to ambulate (Doc. #29 at 2; Tr. 347-65).

The undersigned, however, finds that, although the record evidence supports Plaintiff suffers from recurrent skin ailments, the evidence of record does not support Plaintiff's contention that his skin impairment(s) interfere with the use of his extremities, limit his ability to do fine gross motor movements, or limit his ability to ambulate.

To illustrate, although the record reflects Plaintiff suffers from recurrent alopecia,[4] this condition only results in bald patches on his head, and appears to be successfully treated with injections (*see* Tr. 347-65). Regarding the fungi that affects Plaintiff's fingers and hands, the NFD records cited by Plaintiff recount only a recurrent fungus on Plaintiff's left palm, which results in some diffuse scaling (Tr. 349-50, 355-57).

The NFD records submitted by Plaintiff relate to the time period between 2003 and 2004, with one visit in July 2005 (Tr. 346-58). Following his March 1, 2004, alleged onset date, Plaintiff was seen at NFD on March 26, 2004, May 14, 2004, and on October 2004 when he had a flare of alopecia on his scalp and neck and a scaly rash on his left hand that was occasionally itchy (Tr. 350, 355, 358). Plaintiff had "no rash elsewhere" and "no other skin complaints" (Tr. 355). The dermatologist noted that Plaintiff experienced excellent results in the past with injections (Tr. 355). The dermatologist gave Plaintiff injections for his scalp and prescribed a topical cream for his left hand (Tr. 355).

On December 10, 2004, when Plaintiff returned to NFD two months later, he had new alopecia lesions on his scalp, but no itching (Tr. 357). Plaintiff reported he did not use the previously prescribed topical cream for his left hand because he did not like topical medications (Tr. 357). Plaintiff also had an itchy rash on his lower abdomen, but no other skin complaints, and otherwise felt well (Tr. 357). Plaintiff's dermatologist stated, in pertinent part, as follows: "the left palm shows some mild erythema [redness] with diffuse scaling. The right hand is normal in appearance" (Tr. 357). The dermatologist

---

[4]"Alopecia" is defined by *Stedman's Medical Dictionary* as follows: "a disease like fox mange" that causes loss of hair. *Steadman's Medical Dictionary*, 49 (William R. Hensyl et al. eds., Williams & Wilkins 25th ed. 1990) (1911).

administered injections to Plaintiff's scalp and prescribed Plaintiff oral medication in light of his refusal to use topical medications for his hand (Tr. 357). Subsequently, Plaintiff did not return to NFD for more than seven months. When Plaintiff returned to NFD on July 21, 2005, he reported the prior scalp injection had cleared his bald patch and that the oral medication almost cleared the scaling on his left hand (Tr. 356). On this date, Plaintiff had a recurrence of alopecia with a 1.0 cm bald spot, but no erythema, and "some powdery scale" on his left hand (Tr. 356). Plaintiff again received a scalp injection and was given a prescription for more oral medication for his hand (Tr. 356). No limitation(s) resulting from Plaintiff's alopecia or left hand fungus were ever assessed by NFD (*see* Tr. 347-58).

On August 15, 2005, Plaintiff began seeking treatment from Dr. Finan (Tr. 327-32). Plaintiff's primary complaint on this date was low back pain, and the only finding related to Plaintiff's skin was multiple tattoos (Tr. 329). Dr. Finan's records indicate Plaintiff complained of, *inter alia*, hand and nail fungus; however, Dr. Finan neither elaborated on this condition nor did he assess any limitation(s) due to said fungi (*see* Tr. 282-365).

None of the transcript pages cited by Plaintiff indicate Plaintiff's skin condition(s) interfere with the use of his extremities or limit his ability to do fine gross motor movements or ambulate (Doc. #29 at 2; *see* Tr. 305-18, 347-65). Although Plaintiff correctly points out that he testified at the hearing that the fungi affect his ability to work because he cannot bend his fingers or hands due to cracks and open sores which peel and split open, Plaintiff has cited nothing in the record to support this alleged level of impairment (Doc. #29 at 3; *see* Tr. 347-65, 480, 489). Moreover, the ALJ found Plaintiff's testimony concerning the intensity and persistence of his impairments was not entirely credible (Tr. 17-18). As discussed *infra*, the undersigned finds the ALJ's credibility determination in this regard is

8

supported by substantial evidence.

Plaintiff contends that he satisfied the criteria under Listings 8.03, 8.04, and 8.05, related to skin disorders; however, Plaintiff has failed to show he has the requisite medical findings to meet or equal any of the aforementioned listed impairments.

Specifically, Listing 8.03 relates to bullous disease and requires extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed. 20 C.F.R. pt. 404, subpt. P, appx. 1, § 8.03.

> Bullous diseases of the skin include bullous pemphigoid, pemphigus vulgaris, pemphigus vegetans, pemphigus foliaceous, paraneoplastic pemphigus, mucous membrane pemphigoid, linear IgA bullous disease, dermatitis herpeti-formis, and epidermolysis bullosa acquisita. The hallmark of these diseases is the development of blisters. Blisters are the accumulation of fluid between cells in the upper layers of the skin, specifically the epidermis (top layers) or dermis (layer between the epidermis). The type of disease depends upon what level in the skin the blisters form and where they are located on the body. Many of these diseases are also categorized as autoimmune diseases in which the body's immune system, the system that protects and defends the body, malfunctions (breaks down) and attacks the body's own tissues.

American Academy of Dermatology, http://www.aad.org/public/publications/pamp hlets/ common_bullous.html (last visited Mar. 16, 2009).

The undersigned would point out that Plaintiff has submitted no evidence to support he either suffers from or has been diagnosed with any bullous disease(s). Accordingly, Plaintiff's argument in this regard is meritless.

Listing 8.04 requires a showing of chronic infections of the skin or mucous membranes with extensive fungating[5] or ulcerating lesions persisting at least three months despite continuing treatment. 20 C.F.R. pt. 404, subpt. P, appx. 1, § 8.04. Likewise, Listing 8.05 requires extensive skin lesions that persist for at least three months. 20 C.F.R. pt. 404, subpt. P, appx. 1, § 8.05. The Regulations define extensive skin lesions as follows:

> Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a.   Skin lesions that interfere with the motion of your joints and that <u>very seriously limit your use of more than one extremity</u>; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b.   Skin lesions on the palms of <u>both</u> hands that very seriously limit your ability to do fine and gross motor movements.
>
> c.   Skin lesions on the soles of both feet, the perineum, or both inguinal areas that <u>very seriously limit your ability to ambulate</u>.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 8.01 (*emphasis added*).

As stated *supra*, Plaintiff has not produced medical evidence to support his contention that his skin impairment(s) produce "serious limitations," as defined by the Regulations. Plaintiff has not shown that he suffers from extensive skin lesions that very seriously limit the use of more than one extremity or limit his ability to ambulate. Accordingly, the undersigned finds Plaintiff did not meet his burden of showing that the medical findings related to his skin impairment(s) equal in severity and duration to any of

---

[5]To "fungate" is defined by *Stedman's Medical Dictionary* as follows: "to grow exuberantly like a fungus or spongy growth." *Steadman's Medical Dictionary*, 624 (William R. Hensyl et al. eds., Williams & Wilkins 25th ed. 1990) (1911).

the aforementioned listed skin impairments. *See Wilson*, 284 F.3d at 1224. Thus, the ALJ committed no error in this regard.

Plaintiff additionally maintains his back impairment(s) meet or medically equal Listing 1.04 of the musculoskeletal system (Doc. #29 at 8). Listing 1.04 provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.04.

The undersigned finds no reference in the record of any compromise or compression of the nerve root, arachnoiditis, or pseudoclaudication. Physicians of record consistently found Plaintiff suffered no motor deficit (Tr. 122, 305, 323, 329). Moreover, the inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." 20 C.F.R. 404 Appx. 1 Sub. P, 1.00B2b. Plaintiff has a normal gait and uses no assistive devices (Tr. 121, 245, 250, 329). Plaintiff can even walk on his heels and toes (Tr. 121, 250).

Based on the foregoing, the undersigned finds Plaintiff did not meet his burden of showing that the medical findings related to his musculoskeletal system impairment(s) equal in severity and duration to Listing 1.04. *See Wilson*, 284 F.3d at 1224.

Plaintiff finally contends his mental impairment(s) meet or medically equal either 12.04, affective disorder, or 12.05, mental retardation (Doc. #29 at 10). The undersigned, likewise, finds Plaintiff's contentions in this regard are not supported by the evidence of record.

Listing 12.04 concerns affective disorders such as Plaintiff's depression and requires an individual to show <u>two</u> of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04(B).

Plaintiff had no mental health treatment records. Consequently, the state agency consultative evaluation by Linda Walls, Ph.D. ("Dr. Walls"), is the primary source regarding Plaintiff's mental functioning (Tr. 243-47). Nothing in Dr. Walls' report, however, shows marked limitations in activities of daily living or social functioning, and Plaintiff has not suffered any episodes of decompensation (*see* Tr. 243-47). Plaintiff reported that he gets along well with friends and family, and that he grooms himself and spends his day doing minor chores and watching television (Tr. 246). Dr. Walls reported Plaintiff had adequate social skills, and that his attention and concentration were intact (Tr. 245). Dr. Walls

estimated Plaintiff's intelligence to be in the average range, and stated his insight and judgment seemed fair (Tr. 246).

Although Dr. Walls stated Plaintiff's recent and remote memory skills were moderately impaired and that Plaintiff would have little capacity maintaining attention, concentration, or a work schedule—she attributed these limitations to Plaintiff's physical complaints of pain, and not to any mental disorder (Tr. 245-46). Nevertheless, even if said limitations were attributable to Plaintiff's mental impairment(s), said limitations apply only to the aforementioned category pertaining to difficulties in maintaining concentration, persistence or pace, and not to the categories of activities of daily living or social functioning. Thus, Plaintiff has failed to show he has marked limitation in <u>two</u> of the four categories mentioned above, as required under Listing 1.04.[6]

Plaintiff also maintains that he meets or medically equals Listing 12.05, regarding mental retardation (Doc. #29 at 11). Specifically, Plaintiff states: "Plaintiff contends though <u>not</u> severe, he has an impairment that is medically similar to listed impairment 12.05 mental retardation" (Doc. #29 at 11) (*emphasis added*). This argument is meritless.

Plaintiff has cited no evidence to support his contention that he suffers from mental retardation. Although Plaintiff states his October 1989 school psychological evaluation report Wechsler Subtest profile found he suffers from "mild retardation," the results of said test actually concluded that Plaintiff functions "within the low average range of intellectual

---

[6]Plaintiff cites his own testimony as evidence that he experiences marked limitations in activities of daily living and social functioning; however, the ALJ found Plaintiff's testimony concerning the intensity and persistence of his impairments was not entirely credible (Tr. 17-18). As discussed *infra*, the undersigned finds the ALJ's credibility determination in this regard is supported by substantial evidence.

classification measured by the Wechsler-Revised" (Doc. #29 at 11; Tr. 398).[7]  Specifically,

Plaintiff's performance resulted in a Verbal Scale I.Q. score of 78 (Tr. 397).  Pursuant to

Listing 12.05, mental retardation refers to a significantly subaverage general intellectual

functioning with deficits in adaptive behavior initially manifested during the development

period (*i.e.* before age twenty-two).  The required level of severity for this disorder is met

when the requirements in subparagraphs A, B, C, or D are satisfied. Subparagraph A

requires evidence of dependence on others for personal needs such as bathing and

dressing.  Plaintiff told Dr. Walls he was able to dress, bathe, and groom himself (Tr. 246).[8]

Subparagraph B requires a valid, verbal, performance, or full scale I.Q. of 59 or less; and

subparagraphs C and D require, among other findings, a valid, verbal, performance, or full

scale I.Q. score of 60 through 70.  20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05.

Based on the foregoing, Plaintiff has satisfied none of the criteria, *supra*, that would

show he meets or medically equals Listing12.05, mental retardation.  Therefore, the ALJ

committed no error by finding Plaintiff did not meet said listed impairment.

### B.  Whether the ALJ Erred When Assessing Plaintiff's Residual Functional Capacity ("RFC")

Plaintiff's next argument is that the ALJ's RFC determination is flawed because it is

not based on substantial evidence of record (Doc. #29 at 12-18).  As stated herein, the

undersigned is not persuaded by this argument.

---

[7]Plaintiff was fourteen years of age when he was psychologically evaluated by his school (*see* Tr. 395).

[8]Although Plaintiff stated his wife must remind him to bathe and get dressed because he is depressed, Plaintiff did not represent, nor does the evidence support, that he depends on his wife to bathe and groom him (*see* Tr. 129).

The ALJ determined that, despite all of his impairments, Plaintiff retained the RFC to perform a limited range of light work (Tr. 18).[9] Specifically, the ALJ found Plaintiff could lift/carry up to 20 pounds occasionally, stand/walk up to two hours, sit up to six hours, and carry out simple routine tasks in jobs that entailed little interaction with the public (Tr. 13). In making this determination, the ALJ represented that she considered all of Plaintiff's symptoms to the extent his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record (Tr. 13).

The undersigned finds Plaintiff's RFC, as determined by the ALJ, is supported by substantial evidence of record. First, although Plaintiff testified that he is unable to lift more than five pounds, the record supports the ALJ's determination that Plaintiff can lift up to 20 pounds occasionally. Specifically, C.V. Lazo, M.D. ("Dr. Lazo"), performed a consultative physical examination of Plaintiff in July 2006 (Tr. 248-54). Pursuant to said examination, Plaintiff reported that he stopped working due to back discomfort and that he avoided lifting anything over 30 pounds (Tr. 248). Upon examination, Plaintiff had moderate back spasms and mild pain on palpation, as well as pain with some movements; however, Plaintiff's range of motion ("ROM") was generally full (Tr. 252-53). Additionally, Dr. Lazo found Plaintiff had good motor strength and was able to lift 20 pounds with each hand (Tr. 250).

Plaintiff testified that he has a four inch tear in his right shoulder which limits his ability to lift over five pounds (Tr. 484); however, Plaintiff has submitted no objective medical evidence regarding this alleged injury. Although the transcript pages cited by

[9]According to Social Security Ruling 83-10, light work requires the ability to lift and carry 20 pounds occasionally and up to 10 pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday. SSR 83-10, 1983 WL31251, at *5 (S.S.A. Nov. 30, 1982).

Plaintiff reveal he has complained of shoulder pain, there are no objective findings related to a shoulder injury (*see* Tr. 282, 293, 298, 365). Specifically, on October 9, 2006, Plaintiff complained to his physician of right shoulder pain/dislocation and an x-ray was ordered (Tr. 282). The right shoulder x-ray results revealed "no evidence of fracture or dislocation" (Tr. 421). On March 28, 2007, Plaintiff complained of <u>left</u> shoulder pain (Tr. 365). Barring the aforementioned, the record is devoid of any findings regarding Plaintiff's right shoulder. Similarly, Plaintiff alleges debilitating wrist pain; however, he has submitted no evidence related to any wrist injury.

The Eleventh Circuit pain standard requires evidence of an underlying medical condition. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). In addition, it is the plaintiff who bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes*, 936 F.2d at 1218; *McSwain*, 814 F.2d at 619; *see also* 42 U.S.C. § 423(d)(5) ("an individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

Here, the record lacks evidence of an underlying medical condition related to either Plaintiff's alleged right shoulder injury or his alleged wrist injury. Based on the foregoing, the undersigned finds the ALJ's determination that Plaintiff retains the capacity to lift 20 pounds occasionally is supported by substantial evidence.

Regarding the ALJ's determination that Plaintiff retains the ability to stand/walk up to two hours and sit up to six hours, the undersigned finds this determination is also

supported by substantial evidence.  To illustrate, when asked by the ALJ what he did during the afternoons, Plaintiff responded as follows: "Absolutely nothing.  I usually sit at my house.  I'll get up and maybe walk outside and walk to the lake, walk back, go check the mail . . . ." (Tr. 483).  Further, Plaintiff himself testified that he can sit for 40 minutes at one time, and that he can stand for 20 minutes before needing to sit down (Tr. 484).  The ALJ found Plaintiff can stand/walk up to two hours and sit up to six hours in an eight-hour workday (Tr. 13).  This determination does not mean the ALJ found Plaintiff can walk for two hours at one time or that he can sit for six hours straight.  This determination means Plaintiff requires a job that will allow him the option of sitting or standing as needed, and would include only minimal walking.

   The ALJ incorporated Plaintiff's stated limitations related to sitting, walking, and standing into the hypothetical questions she posed to the VE (Tr. 518-21).  Specifically, the ALJ told the VE, "I want you to assume a younger individual . . . who, based on the Claimant's testimony, can sit for only 40 minutes, stand for only 20 minutes at a time, [and] basically [can] not walk for any real distance . . . " (Tr. 518-21).  The VE considered said limitations when he testified that other jobs exist in significant numbers that Plaintiff can perform despite his limitations (*see* Tr. 518-21).

   Plaintiff also contends that, due to his pulmonary limitations, he can "hardly take a walk" without "gasping for air" and feeling like he was "having a heart attack" (Doc. #29 at 13; *see also* Tr. 487).[10]  The record, however, neither shows significant medical concern about Plaintiff's breathing impairment, nor does it reflect any limitations due to said

---

[10]Plaintiff testified that he smokes two packs of cigarettes per day (Tr. 502).

impairment.[11]  Specifically, examination reports sometimes showed clear lungs (Tr. 323, 329) and at other times mentioned scattered rhonchi, without rales or wheezes (Tr. 305, 320-21).  Plaintiff underwent two pulmonary function studies (Tr. 139-41, 273-81).  The pulmonary function study of September 5, 2006 showed severe obstruction; however, it also revealed significant improvement after administration of a bronchodilator (Tr. 274). The pulmonary function study of September 25, 2006 showed only "moderate diffusing abnormality" (Tr. 139).

Based on the foregoing, the undersigned finds no error in the ALJ's determination that Plaintiff can stand/walk up to two hours and sit up to six hours in an eight-hour workday (*see* Tr. 13).

Plaintiff's next contention is that the ALJ erred by not including in her RFC finding all the limitations Plaintiff claims stem from his depression (Doc. #29 at 14-16).  The undersigned, however, finds the ALJ included the limitations which stem from Plaintiff's depression that are supported by the record.  Dr. Walls, who evaluated Plaintiff in July 2006, found Plaintiff was cooperative and his social skills were adequate (Tr. 245). Plaintiff's speech was fluent, language was adequate, thought processes were coherent and goal-directed, and his affect was full and congruent (Tr. 245).  Plaintiff's attention and concentration were intact (Tr. 245).  His intellectual functioning was estimated to be in the average range and his insight and judgment were assessed as fair (Tr. 245-46).  Dr. Walls believed pain complaints interfered with Plaintiff's memory, his ability to learn new tasks,

_____

[11]As stated previously, the ALJ found Plaintiff's statements concerning the intensity and persistence of his impairments was not entirely credible (Tr. 17-18).

and his ability to maintain a schedule (Tr. 246); however, she concluded Plaintiff was capable of performing simple tasks and making routine decisions (Tr. 246). Dr. Walls also stated Plaintiff was able to interact appropriately with others (Tr. 246).

The ALJ found, despite Plaintiff's depression, Plaintiff retains the mental RFC to perform simple routine tasks (Tr. 18). The ALJ also found that, as a result of Plaintiff's testimony regarding his social interaction problems, Plaintiff is limited to jobs that only entail minimal interaction with the public (Tr. 18). Although Plaintiff testified he "can't get along with other people telling [him] what to do and stuff," when asked by his attorney to elaborate, Plaintiff stated he does not remember the reason why he once threw a broom at a co-worker (Tr. 495-96). Although Plaintiff maintains Dr. Walls' records "overwhelmingly indicate[ ] Plaintiff cannot interact with the public or authority" (Doc. #29 at 18), this is not what the undersigned gleans from Dr. Walls' report. To illustrate, Dr. Walls stated Plaintiff's insight and judgment were fair and that he was able to interact appropriately with others (Tr. 245-46). Furthermore, the undersigned's independent review of the record reveals that on March 1, 2006, Plaintiff told a disability case worker that, although he does get frustrated and agitated, he has "no memory issues" and "gets along well with family and friends" (Tr. 106). Based on the foregoing, Plaintiff has not satisfied his burden of showing his depression is debilitating. Therefore, the undersigned finds the mental RFC limitations, as determined by the ALJ, are based on substantial evidence of record.

**C. Whether Substantial Evidence of Record Supports the Hypothetical Question Posed to the Vocational Expert**

Plaintiff's next argument is that the ALJ erred by not posing a hypothetical question to the VE that depicted all of Plaintiff's alleged impairments. This argument is unavailing as set forth below.

Here, Plaintiff asserts many of the same arguments that have previously been raised. Therefore, the undersigned will only address those arguments that have not already been addressed. First, Plaintiff asserts the ALJ should have considered his four felony convictions for grand theft and the negative effect of those convictions on his ability to get a job (presumably because employers may be reluctant to hire a four-time convicted felon) (Doc. #29 at 19-21). Specifically, Plaintiff states:

> The ALJ did not consider nor [sic] mention Plaintiff's four felony convictions to the VE. Plaintiff attempted to admit his felony convictions but the ALJ refused . . . saying she was not interested in them [the convictions]. The undersigned [Plaintiff's attorney] cannot explain why this dialog is missing from the transcripts. Four grand theft convictions will preclude virtually anyone from employment, whether suffering from physical or mental impairments or not. When the convictions are added to the severe physical and mental impairments here, no high school diploma or GED, employment is nonexistent, especially the jobs named by the VE. This 'impairment' of felony convictions should have been posed to the VE for consideration as required.

(Doc. #29 at 20-21) (*emphasis added*).

Even though this argument lacks any legal support whatsoever and is utterly meritless, the undersigned will nevertheless address said argument.

The only consideration in a disability determination is the physical and mental capacity to perform work. Whether an individual would be hired if he or she applied for a

particular job matters not. 20 C.F.R. § 404.1566(a)(3). An inability to obtain work or the hiring practices of employers is not considered under the Regulations. 20 C.F.R. § 404.1566(c). As demonstrated by the VE's testimony, a significant number of jobs existed during the period at issue that would have accommodated Plaintiff's residual functional capacity (Tr. 520). Thus, the potential negative perception employers may or may not have regarding a four-time convicted felon is, at most, irrelevant.

Secondly, Plaintiff maintains the ALJ should have incorporated Plaintiff's alleged pulmonary limitations into the hypothetical question posed to the VE (Doc. #29 at 20). As stated, *supra*, the record does not reflect significant medical concern regarding Plaintiff's breathing impairment. Examination reports sometimes showed clear lungs (Tr. 323, 329) and at other times mentioned scattered rhonchi, without rales or wheezes (Tr. 305, 320-21). Although Plaintiff's wife testified he did better on his breathing tests with the "puffer [bronchodilator]," she stated no doctor has suggested he use an inhaler (Tr. 511-12). Moreover, the record contains no assessment of workplace limitations related to Plaintiff's pulmonary condition. Accordingly, the undersigned finds no error in the ALJ's omission of a pulmonary limitation in the hypothetical question posed to the VE.

### D.  Whether Substantial Evidence of Record Supports the ALJ's Finding That Plaintiff's Testimony Concerning the Intensity and Persistence of his Impairments was not Entirely Credible

Plaintiff argues the ALJ erred in rejecting his claims of debilitating skin conditions and back pain (Doc. #29 at 21-25).

The Eleventh Circuit pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged

pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry*, 782 F.2d at 1553. After considering a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)); *see also Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (finding the credibility of a claimant's testimony is the duty of the Commissioner).

Additionally, the Regulations state that when the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the pain alleged, the Commissioner must then evaluate the intensity and persistence of the pain to determine how it limits the claimant's capacity for work. 20 C.F.R. § 404.1529. In evaluating the intensity and persistence of a claimant's pain, the ALJ shall consider all of the available evidence, including the claimant's statements, signs and laboratory findings, and statements from treating and non-treating sources. 20 C.F.R. § 404.1529.

Here, the ALJ pointed out that Plaintiff's treatment records provide no indication that he has severe work-related limitations from any dermatological condition (Tr. 17). Plaintiff maintains his fungi has existed for years, reoccurs with severe lesions over multiple body sites, interferes with use of extremities, limits his ability to do fine gross motor movements, and limits his ability to ambulate (Doc. #29 at 2; Tr. 347-65). The medical evidence, however, reveals Plaintiff received injections in his scalp for hair loss and occasionally had rashes or scaling on other areas of his body, but showed good response and control with

medications (*see* Tr. 347-65). No physician suggested Plaintiff had any work-related limitation as a result. The ALJ noted said inconsistencies between the record and Plaintiff's testimony when she determined Plaintiff's testimony concerning the limiting effect of his skin impairments was not entirely credible (Tr. 17). The undersigned finds the ALJ's determination in this regard is supported by the record. In addition, the VE identified jobs that did not require more than occasional reaching or handling (Tr. 523-24).

Similarly, the ALJ gave proper consideration to Plaintiff's complaints of back pain. Plaintiff's treating physician, Dr. Finan, completed a form for Plaintiff in March 2006, noting good range of motion in the major joints and range of motion charts showing rather slight limitations of the lumbar spine (normal forward flexion is ninety degrees and Plaintiff was limited to seventy-five (Tr. 123). Normal extension and lateral flexion was twenty-five degrees and Plaintiff was limited to twenty (Tr. 121, 123). Dr. Finan stated Plaintiff had good grip strength and normal gait (Tr. 121). He could squat, walk on his toes and heels, and needed no assistive device (Tr. 121). Dr. Finan stated Plaintiff had no motor deficits or motor loss (Tr. 122). The ALJ noted that, although the record reveals Plaintiff suffers some spasm and reduced ROM, no physicians have noted any work-place limitations (Tr. 17).

Even though no physicians noted any limitations secondary to Plaintiff's back complications, the ALJ nevertheless credited Plaintiff with significant limitations stemming from his back pain (*see* Tr. 17). Specifically, the ALJ restricted Plaintiff to 10 to 20 pounds of lifting, sitting for only six hours, and walking or standing for only two hours during the workday (Tr. 13). The ALJ incorporated these limitations into the hypothetical question

posed to the VE (Tr. 519).  In response to the hypothetical question, the VE identified examples of unskilled jobs, including sedentary jobs, that are consistent with the aforementioned limitations (Tr. 520).

Furthermore, Plaintiff's own testimony regarding his postural limitations supports the ALJ's finding in this regard.  Plaintiff states, "I usually sit at my house.  I'll get up and maybe walk outside and walk to the lake, walk back, go check the mail . . . ." (Tr. 483).  Plaintiff also stated he can sit for 40 minutes at one time and can stand for 20 minutes before needing to sit down (Tr. 484).  These are the limitations that were incorporated into the hypothetical question posed to the VE (Tr. 519-20).  The ALJ also noted that Plaintiff told Dr. Lazo that he was "usually more comfortable sitting (Tr. 17; *see also* Tr. 248).

If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony.  *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).  Here, the undersigned finds the aforementioned reasons cited by the ALJ to discredit the alleged debilitating nature of Plaintiff's impairments are supported by substantial evidence of record, *supra.*

Based on the foregoing, the undersigned finds the ALJ properly discredited Plaintiff's subjective complaints of debilitating pain.

## IV. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this  23rd  day of March, 2009.

Copies to all counsel of record

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge